# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| In re:<br><br>USA GYMNASTICS,[1]<br><br>        Debtor. | Chapter 11<br><br>Case No. 18-09108-RLM-11 |
| USA GYMNASTICS,<br><br>        Plaintiff,<br><br>v.<br><br>GEDDERTS' TWISTARS USA GYMNASTICS CLUB, INC., TWISTARS USA, INC., JOHN GEDDERT, KATHRYN GEDDERT, DONALD PETERS, SOUTHERN CALIFORNIA ACRO TEAM, INC., BMK PARTNERS LTD, BMK TRAINING FACILITIES, LTD., KAROLYI TRAINING CAMPS, LLC, KAROLYI'S ELITE, KAROLYI WORLD GYMNASTICS INC., BELA KAROLYI, MARTHA KAROLYI, RICHARD CARLSON, and WORLD SPORT CHICAGO,<br><br>        Defendants. | Adversary Case No. 19-50075 |

### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT
### OF ITS MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff USA Gymnastics (the "**Debtor**" or "**USAG**" or "**Plaintiff**") respectfully submits its Memorandum of Law in Support of its Motion for a Preliminary Injunction staying Gedderts' Twistars USA Gymnastics Club, Inc., Twistars USA, Inc., John Geddert, and Kathryn Geddert

---

[1] The last four digits of the Debtor's federal tax identification number are 7871. The location of the Debtor's principal office is 130 E. Washington Street, Suite 700, Indianapolis, Indiana 46204.

(collectively, the "**Twistars Stay Defendants**"), Donald Peters ("**Peters**"), Southern California Acro Team, Inc. ("**SCATS**"), BMK Partners LTD, BMK Training Facilities, Ltd., Karolyi Training Camps LLC, Karolyi's Elite, Karolyi World Gymnastics Inc., Bela Karolyi, and Martha Karolyi (collectively, the "**Karolyi Stay Defendants**"), Richard Carlson ("**Carlson**") and World Sport Chicago ("**WSC**" and with the Twistars Stay Defendants, Peters, SCATS, the Karolyi Stay Defendants, and Carlson, the "**Stay Defendants**") from the prosecution and defense of certain lawsuits identified in the Complaint. (*See* Adv. Dkt. 1.)

## BACKGROUND

**A.     The Lawsuits Against USAG.**

Prior to the Petition Date, USAG was named as a defendant in over 100 different lawsuits in connection with sexual crimes committed by Larry Nassar. These lawsuits allege various claims against USAG including, *inter alia*, negligent hiring, negligent retention, negligent supervision, negligent failure to warn, train, or protect, intentional infliction of emotional distress, fraud, and violations of the Racketeering Influenced Corrupt Organizations Act.

In certain of these lawsuits, plaintiffs also named the Stay Defendants as co-defendants (the "**Stay Defendants' Lawsuits**"). Attached hereto as Exhibits A-E are lists of the Lawsuits naming: (a) the Twistars Stay Defendants; (b) the Karolyi Stay Defendants; (c) SCATS and Peters, respectively; (d) Carlson; and (e) WSC, which exhibits are incorporated herein by reference. These Lawsuits are now stayed as to USAG by operation of 11 U.S.C. § 362(a), but are not stayed as to the Stay Defendants.

On April 30, 2018, the Twistars Stay Defendants tendered their defense of the Twistars Stay Defendants' Lawsuits and sought indemnification under USAG's insurance policies issued by Combined Specialty Insurance Company/Virginia Surety Company, Great American

2

Insurance Group and K&K Insurance Group, Inc. *See* Exhibit F hereto, which exhibit is incorporated herein by reference.

On April 20, 2018, the Karolyi Stay Defendants filed a lawsuit against USAG in Walker County Texas alleging that they were entitled to full and complete indemnification from USAG for any claims raised in the Karolyi Stay Defendants' Lawsuits. *See* Exhibit G hereto at 22-24, which exhibit is incorporated herein by reference. The Karolyi Stay Defendants allege that they are named as additional insureds under USAG's insurance policies and that not all of their defense costs have been reimbursed, allegedly giving rise to a direct claim against USAG for these costs and any liabilities arising out the Karolyi Stay Defendant Lawsuits. *Id*. The Karolyi Stay Defendants further allege that they are owed indemnification by USAG pursuant to USAG's by-laws. *Id*. Finally, the Karolyi Stay Defendants contend that they are owed indemnification pursuant to an indemnification provision in the Olympic Training Site Facility Designation License and Use and Access Agreement between certain Karolyi Stay Defendants, USAG, and the US Olympic Committee.

Stay Defendant Peters was a former head coach of the 1984 United States Olympic Gymnastics team and operated SCATS. The other Stay Defendants may have, on information and belief, made claims against USAG's insurance policies and may make claims for indemnification against USAG.

As a practical matter, if the Stay Defendants' Lawsuits continue USAG will most likely be required to participate so as to protect its interests, thereby negating the benefits of the automatic stay and taking away the breathing room afforded to USAG to attempt to negotiate a consensual settlement and chapter 11 plan. If these Stay Defendants' Lawsuits proceed, it is highly likely that plaintiffs in those cases will seek discovery from USAG, thereby diverting

3

USAG's resources and employees and depriving USAG of the breathing room that the automatic stay provides. Further, counsel for many of the plaintiffs stated in a letter dated December 12, 2018, that in his view "continuing discovery, challenging pleadings, and engaging in other litigation will infringe upon the rights of USAG...." *See* Exhibit H hereto. On February 1, 2019, that same counsel representing plaintiffs in certain of the Twistars Stay Defendants' Lawsuits threatened to seek relief from the automatic stay in the Twistars Stay Defendants' Lawsuits, contending that motions the Twistars Stay Defendants had filed implicated USAG's defenses in those Lawsuits. *See* Exhibit I hereto. While USAG disputes certain of the allegations in this letter, the point is that if the Stay Defendants' Lawsuits proceed, it is highly probable that USAG will be required to participate and/or actively monitor these lawsuits to ensure that USAG's rights and defenses are not adversely affected.

Recognizing the inter-relationship between the claims against USAG and the various parties named as co-defendants with USAG, the vast majority of plaintiffs and certain of the co-defendants in pending litigation have agreed to the Court's issuance of an injunction under section 105(a) of the Bankruptcy Code staying certain litigation as to all parties during the pendency of USAG's chapter 11 case subject to the right to terminate that agreement after notice and subject to USAG's right to seek to extend the stay (the "**Agreed Stay Order**"). (*See* Case No. 18-09108, Dkt. 370.)

Although the plaintiffs in the Stay Defendants' Lawsuits have agreed to a stay of the Lawsuits, the Stay Defendants have refused to agree to a stay of the Stay Defendants' Lawsuits.

B.    **USAG's Restructuring Prospects.**

Once the Lawsuits are enjoined, USAG will have a straightforward path to reaching a full and fair settlement and confirming a chapter 11 plan. Once the deadline for filing claims expires

4

on April 29, 2019, USAG and the Sexual Abuse Survivors Committee anticipate that USAG, the Sexual Abuse Survivors' Committee, sexual abuse survivors, USAG's insurance carriers and others will engage in a court-approved mediation process that will hopefully result in a consensual plan of reorganization.

The continued prosecution and defense of the Stay Defendants' Lawsuits endangers USAG's restructuring effort by threatening to deplete and dilute the assets available for distribution to USAG's creditors and by threatening the ability of USAG to reach a consensual plan of reorganization.

## ARGUMENT

"To obtain [a preliminary] injunction under section 105(a), it is unnecessary to satisfy the traditional elements for injunctive relief." *In re Caesars Entertainment Operating Co., Inc.*, 561 B.R. 441, 450 (Bankr. N.D. Ill. 2016) (citing *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998)). "As long as the third-party litigation would defeat or impair the bankruptcy court's jurisdiction over the case before it, the debtor need show only that (1) there is a likelihood of success on the merits, which in this context means the likelihood of a successful reorganization; and (2) the injunction would serve the public interest." *Id.* (citing *Fisher*, 155 F.3d at 882; *In re Excel Innovations*, 502 F.3d 1086, 1095 (9th Cir. 2007); *In re Lyondell Chem. Co.*, 402 B.R. 571, 588-89 (Bankr. S.D.N.Y. 2009)) (internal citations and quotations omitted). "The debtor need not show irreparable harm or an inadequate remedy at law." *Id.* Here, for the reasons set forth below, all of these elements are satisfied.

**A.     The Stay Defendants' Lawsuits Threaten To Defeat Or Impair This Court's Jurisdiction By Depleting USAG's Estate And Frustrating USAG's Restructuring Effort.**

The Stay Defendants' Lawsuits threaten to defeat or impair this Court's jurisdiction by depleting USAG's estate and frustrating USAG's restructuring effort. Courts routinely stay the prosecution of claims against non-debtors where failure to do so would "interfere with, deplete or adversely affect property of a debtor's estate or which would frustrate the statutory scheme embodied in Chapter 11 or diminish a debtor's ability to formulate a plan of reorganization." *In re Gander Partners LLC*, 432 B.R. 781, 788 (Bankr. N.D. Ill. 2010); *accord Fisher* 155 F.3d at 882; *Caesars*, 561 B.R. at 457; *In re Kmart Corp.*, 285 B.R. 679, 688 (Bankr. N.D. Ill. 2002); *In re Northlake Bldg. Partners*, 41 B.R. 231, 233 (Bankr. N.D. Ill. 1984). This Court should too for the reasons set forth below.

**i.     The Stay Defendants' Lawsuits Threaten To Deplete Critically Important Insurance Coverage.**

The continuance of the Stay Defendants' Lawsuits threatens to deplete the most significant source of assets available to fund a chapter 11 plan: USAG's insurance coverage. USAG's insurance policies and the proceeds thereof constitute estate property pursuant to section 541(a)(1) of the Bankruptcy Code. *See Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 748 (7th Cir. 1989) (noting that a "policy of insurance is an asset of the estate"); *In re Gladwell*, 2009 WL 140098, at *2 (Bankr. C.D. Ill. 2009) (same); *In re Allied Prods. Corp.*, 288 B.R. 533, 535-36 (Bankr. N.D. Ill. 2003) (same); *In re Rose Investments, Inc.*, 1996 WL 596328 at *5 (Bankr. N.D. Ill. 1996) (same); *see also* 11 U.S.C. § 541(a)(6) (defining estate property to include "proceeds … of or from property of the estate"); *In re Forty-Eight Insulations, Inc.*, 54 B.R. 905, 908 (Bankr. N.D. Ill. 1985) ("insurance policies and proceeds are property of the estate").

6

To the extent that the Stay Defendants are entitled to proceeds of USAG's insurance policies for litigation costs or to satisfy a judgment or settlement, fewer proceeds will be available to USAG, thereby depleting critical assets of USAG's estate. *See In re IFC Credit Corp.*, 422 B.R. 659, 663 (Bankr. N.D. Ill. 2010). The Twistars and Karolyi Stay Defendants have put USAG on notice of a claim against its insurance policies. On information and belief, the other Stay Defendants may have made such claims without notifying USAG. These demands against USAG's policies alone warrant staying the Stay Defendants' Lawsuits. *See In re Quigley Co., Inc.*, 676 F.3d 45, 58 (2d Cir. 2012); *see also In re A.H. Robins Co., Inc.*, 788 F.2d 994, 1001-02 (4th Cir. 1986) (proceedings against non-debtors "who qualify as additional insureds under the [insurance] policy are to be stayed under section 362(a)(3)"); *IFC Credit Corp.*, 422 B.R. at 663 (staying litigation against non-debtors pursuant to section 105(a) because of risk to debtors' insurance policy proceeds); *In re marchFIRST, Inc.*, 288 B.R. 526, 532-33 (Bankr. N.D. Ill. 2002) (same) *aff'd sub nom. Megliola v. Maxwell*, 293 B.R. 443, 449-50 (N.D. Ill. 2003).

### ii. Allowing The Stay Defendants' Lawsuits To Proceed Will Frustrate USAG's Restructuring Effort.

Allowing the Stay Defendants' Lawsuits to proceed will also frustrate USAG's ability to full and fairly resolve the claims of sexual abuse survivors and reach agreement on a consensual plan of reorganization. Enjoining lawsuits against non-debtor third parties constitutes an appropriate exercise of a bankruptcy court's section 105(a) powers when the injunction is "likely to enhance the prospects for a successful resolution of the disputes attending [the debtor's] bankruptcy." *In re Caesars Entertainment Operating Co., Inc.*, 808 F.3d 1186, 1188-89 (7th Cir. 2015). Here, allowing the Stay Defendants' Lawsuits to proceed will endanger USAG's restructuring effort for several reasons.

*First*, the Lawsuits threaten to create indemnification obligations for USAG. In addition to diluting the pool of assets available for distribution to USAG's creditors, any applicable indemnification obligations would require USAG to closely monitor the Defendants' defense of the Lawsuits. This, in turn, would distract USAG's leadership and outside professionals from the primary task at hand—negotiating and confirming a chapter 11 plan that will benefit *all* stakeholders. That adverse impact on the USAG's estate warrants extending the stay pursuant to section 105(a). *See Kmart*, 285 B.R. at 688 (noting section 105(a) has been used to stay litigation against non-debtors where "the debtor has an absolute duty to indemnify the nondebtor either by contract or operation of law"); *In re Eagle–Picher Indus., Inc.*, 963 F.2d 855, 860 (6th Cir. 1992) (affirming stay of litigation against non-debtor pursuant to 105(a) where debtor had to indemnify non-debtor).

Similarly, if the Stay Defendants' Lawsuits proceed, USAG will face significant discovery burdens that will distract personnel key to its restructuring. USAG's leadership and outside professionals have the overriding responsibility to shepherd USAG through its restructuring, and will necessarily be distracted from this responsibility if they are obligated to devote time and resources responding to discovery demands. The discovery burden that the Stay Defendants' Lawsuits will impose on USAG will harm its restructuring effort and undermine the protections of the automatic stay. *See, e.g.*, *Kmart*, 285 B.R. at 688; *In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993); *In re Sudbury, Inc.*, 140 B.R. 461, 465 (Bankr. N.D. Ohio 1992); *see also In re United Health Care Organization*, 210 B.R. 228, 233 (S.D.N.Y. 1997); *In re Calpine Corp*, 354 B.R. 45, 49 (Bankr. S.D.N.Y. 2006).

Moreover, the more time USAG's outside counsel is required to spend monitoring these cases to ensure that USAG's rights are not adversely affected without USAG's participation and

8

responding to discovery requests in third-party litigation, the greater the administrative burden on USAG's estate. These additional administrative expenses will make it more difficult for USAG to successfully confirm a plan and will diminish recoveries for USAG's creditors even if no plan is confirmed.

For all of these reasons, the Court should enjoin the Stay Defendants' Lawsuits to avoid depleting USAG's estate and endangering its restructuring effort. *See Caesars*, 561 B.R. at 457; *Gander*, 432 B.R. at 788; *Fisher*, 155 F.3d at 882; *Kmart*, 285 B.R. at 688; *Northlake*, 41 B.R. at 233.

**B.     Once the Stay Defendants' Lawsuits Are Enjoined, There is A Strong Likelihood of USAG Successfully Restructuring.**

Once the Stay Defendants' Lawsuits are enjoined, there is a strong likelihood of USAG successfully restructuring. There is a reasonable likelihood a debtor will successfully restructure when, as here, there is a reasonable probability that a plan of reorganization will be confirmed. *See Gander*, 432 B.R. at 788; *see also Northlake*, 41 B.R. at 233. Once the Lawsuits are enjoined, USAG will have a straightforward path to confirming a chapter 11 plan. The claims bar date set by the Court will expire on April 29, 2019. USAG anticipates that the vast majority of claims asserted against it, both in number and dollar amount, will be sexual abuse-related general unsecured claims. USAG has effectively no secured debt and does not expect significant priority or other unsecured claims to be filed. Once the bar date passes, USAG anticipates that USAG, the Sexual Abuse Survivors Committee, the sexual abuse survivors, USAG's insurance carriers and others will engage in a court-approved mediation process that will hopefully result in a full and fair settlement and consensual plan of reorganization.

9

**C.      Enjoining The Stay Defendants' Lawsuits Will Serve The Public Interest.**

Finally, enjoining the Stay Defendants' Lawsuits will serve the public interest. "In the bankruptcy context, the relevant public interest is the interest in successful reorganizations, since reorganizations preserve value for creditors and ultimately the public." *Caesars*, 561 B.R. at 453; *accord Gander*, 432 B.R. at 789 ("Promoting a successful reorganization is one of the most important public interests"); *In re Gathering Restr., Inc.*, 79 B.R. 992, 999 (Bankr. N.D. Ind. 1986). In this case, for the reasons discussed above, staying the Stay Defendants' Lawsuits will serve the public interest by allowing USAG to focus on the most important tasks at hand: reaching a full and fair settlement and confirming a chapter 11 plan. This, in turn, will preserve value for all stakeholders by facilitating an efficient, global resolution of the underlying "three-cornered" disputes. *See Caesars*, 808 F.3d. at 1189; *see also Caesars*, 561 B.R. at 453.

## CONCLUSION

For all of the foregoing reasons all of the requirements enumerated in *Caesars* for issuing a section 105(a) injunction are satisfied. *See* 561 B.R. at 450. The Court should therefore exercise its section 105(a) powers to enjoin the continued prosecution and defense of the Stay Defendants' Lawsuits and grant such other relief as may be just.

Dated: March 29, 2019

Respectfully submitted,

**JENNER & BLOCK LLP**

By: /s/ *Catherine Steege*

Catherine L. Steege (admitted *pro hac vice*)
Dean N. Panos (admitted *pro hac vice*)
Melissa M. Root (#24230-49)
353 N. Clark Street
Chicago, Illinois 60654
(312) 222-9350
csteege@jenner.com
dpanos@jenner.com
mroot@jenner.com

*Counsel for the Debtor*